28 C.C.P.A.(Patents)

## In re TENNEY.

**Patent Appeal No. 4394.**

Court of Customs and Patent Appeals.
Feb. 3, 1941.

Benjamin Sweedler, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of five of the claims of appellant's application for patent relating to a method of making combustible gas. Two claims stand allowed. The appealed claims are numbered, respectively, 13, 14, 19, 20, and 21. We quote Nos. 13 and 19:

"13. The process of manufacturing water gas which consists in alternately introducing an air blast and a steam run into the fuel bed of a gas generator, and admitting heavy oil into the top of the generator simultaneously with the steam run to enrich the resulting gas, said air blast being introduced in a reverse direction into the generator and downwardly through at least the upper portion of the fuel bed to consume carbonaceous deposits resulting from the admission of said heavy oil, and withdrawing the air blast from the generator at a point below the top of the fuel bed."

"19. In a process of making carburetted water gas in a set including a single generator containing a ·fuel bed, a single carburetor and a single superheater in individual detached shells connected in series, the steps which consist in alternately introducing an air blast and a steam run into and through the fuel bed and admitting hydrocarbon oil, which upon decomposition forms carbonaceous deposits, into the top of the generator simultaneously with the steam run to enrich the resulting gas, said air blast being in part up through the fuel bed and in part in a reverse direction through the fuel bed in the generator downwardly through at least the upper portion thereof to consume carbonaceous deposits resulting from the introduction of said hydrocarbon oil, and withdrawing the air blast from the generator at a point below the top of the fuel bed."

The rejection of all the appealed claims was based on the ground that they are not supported by the disclosure of the application. No prior art reference was cited.

A summarization of the somewhat unusual history of the case is deemed proper.

Appellant's instant application embracing a number of claims was filed November 1, 1932. It recited that it was a division of a prior application, serial No. 31,028, filed by him May 18, 1925, which eventuated in patent 1,900,961 on March 14, 1933. By an amendment presented October 6, 1934, appellant copied as claim 13, a claim (No. 1) from a patent (No. 1,947,792) issued February 20, 1934, to Gerald J. Nordmeyer and Thomas W. Stone as joint inventors, and sought an interference. An interference was formally declared January 22, 1935, the claim so copied constituting the only count. Nordmeyer and Stone moved

to dissolve the interference on the ground that Tenney was not entitled to make the count for lack of disclosure. The Primary Examiner sustained the motion and, upon appeal as provided by Patent Office rule 124, as then in force, the board affirmed his decision. No award of priority was made. Tenney appealed to this court. Nordmeyer and Stone moved to dismiss the appeal on the ground that since there was no award of priority this court was without jurisdiction. We sustained the motion in a decision rendered February 7, 1938. Tenney v. Nordmeyer et al., 94 F.2d 396, 400, 25 C.C.P.A., Patents, 851.

In the course of our decision we said: " * * * we think it not improper to say that, in our opinion, a proper appeal being taken, appellant is entitled, under the law, to have his right to make the claim constituting the count in issue decided by this court."

After our decision appellant prosecuted his application, including all the appealed claims in an ex parte proceeding. Other claims were embraced which were denied below and not appealed to us. Therefore, there are portions of the examiner's statement and of the board's decision which have no relevancy to the issues before us. We have found it necessary, however, to examine the decisions in the interference proceeding in connection with the office actions and decisions in the ex parte case, because of references made in the latter to expressions embraced in the former.

It appears that on April 30, 1938, the examiner held that the application was not "a true division" of the patent application and ruled that the word "divisional" should be changed to "continuation-in-part."

It further appears that appellant, in response to the examiner's ruling, amended the application by cancelling the phrase "oil or other hydrocarbon enriching material" from the specification and changing "liquid hydrocarbon enriching material" wherever it occurred in claims 14, 19, 20, 21, and 22 to "hydrocarbon oil." Thereafter the examiner, in a decision rendered October 17, 1938, formally withdrew the "objection to designating the instant application as a division," and withdrew the "rejection of all the claims except 13 based on the ground that they are broader than warranted by the original disclosure."

The proceedings immediately above recited, beginning with the examiner's ruling of April 30, 1938, took place in the ex parte proceeding and were not involved in the interference case referred to in which latter the final decision of the board was rendered August 4, 1936.

In passing ex parte upon the merits of the claims, the examiner first considered claim 13 separately, and rejected it upon two grounds, both involving the matter of disclosure in the original application. The first of these grounds was that the "heavy oil" named in the claim was not met by the disclosure of "tar" to which the original application was confined. The second ground was that the claim, when read on Tenney's disclosure, "is more or less meaningless," and the latter ground was subsequently applied to all the other appealed claims.

The first ground so applied in the ex parte proceeding is one of the grounds which was applied by the examiner in dissolving the interference, while the second ground is the same as that which the board applied when it affirmed the decision of dissolution on the interlocutory inter partes appeal.

The case as it comes before us is somewhat complicated, not alone by reason of the technical character of the process at issue, but because of the necessity for analyzing so many different decisions and statements by the respective tribunals of the Patent Office and sifting them to find the particular subject matter properly applicable to the issue or issues involved here.

Because of the complications growing out of the situation described, the court, after a study of the case following the regular oral argument, felt justified in requesting a reargument and this was had. This reargument, accompanied by an illustrative drawing filed by appellant, has been of much aid in clarifying and, we may add, in simplifying the issue.

The board described the process or processes in the following terms:

"The subject matter of the appealed claims is a process of making carburetted water gas in a set consisting of a single generator containing a fuel bed, a single carburetor and a single superheater. In carrying out appellant's method, four different steps are mentioned as specifically described in the examiner's statement. These operations consist

"(1) of a forward air run in which the fuel in the generator is blasted and the

hot products pass through the carburetor and superheater.

"(2) a reverse run with air which travels through the superheater carburetor and downwardly through the combined generator and retort 4.

"(3) a reverse steam run in which the steam enters the superheater, passes through the carburetor and downwardly through the combined generator and retort, and

"(4) a forward steam run in which the steam is first introduced at the bottom of the generator I and passes upwardly through the generator and retort 4, thence through the carburetor and superheater to storage."

The instant application is accompanied by a drawing which we here reproduce.

INVENTOR
C I Tenney
BY
ATTORNEY

It may be remarked that the chamber indicated by the numeral 4 and designated "Fuel Chamber" in the above drawing is often referred to throughout the record as the "retort" chamber and also as a "zone."

In his ex parte decision the examiner quoted from the prior decisions in the interference proceeding where only present claim 13 was involved, and the following description of the process which the board subsequently expressly approved was given:

"It will be noted also that in the Primary Examiner's opinion of November 21, 1935 (Paper No. 30 in interference No. 70,065) which opinion was affirmed by the Board, it was emphasized (at page 11) that 'the fuel bed of Tenney comprises two zones 1 and 4. Zone 1 is the water gas generating zone composed chiefly of incandescent coke, while zone 4 is a coking zone through which (bituminous) coal moves downwardly and is progressively coked. This operation is regulated so that the coking (of the bituminous coal) is substantially completed at least by the time the downwardly moving fuel passes the blast gas offtake 7.' Of course, in Nordmeyer and Stone the forward air blast passes upwardly through the entire fuel bed. * * * The former opinion continues: 'Zone 4 obviously does not become as hot as the gas generating zone 1 (i. e., because the hot forward air blast gases by-pass the upper coking zone or retort 4 by means of the passage 7) which latter corresponds to the generating zone of Nordmeyer et al., and it is obvious that material (i. e., tar) injected onto the top of zone 1 (zone 4) will be distilled more or less progressively along with the coal (see lines 18 to 25, page 7 of Tenney's application) which operation is materially different from that which occurs in the Nordmeyer application. * * * The only combustion, if any, which occurs in Tenney's (retort or coking) zone 4 occurs during the reverse air blast, whereas Nordmeyer's zone of oil admission is heated by both up and down air blasting.

" 'Since the process of the count must be construed as including a forward air blast, as admitted by the party Tenney, this forward blast must be regarded as conventional, just according to that disclosed by Nordmeyer. The conventional forward blast passes through the entire height of the fuel bed. Tenney's forward air blast is stated to be only through zone 1.

" 'If Tenney's fuel bed be considered as both zones 4 and 1, it is obvious that he does not disclose the conventional forward air blast included by necessary inference in the count. On the other hand, if it be held that zone 4 is the fuel bed, then Tenney fails to disclose the step of admitting any kind of oil (tar) whatever "to the top of the generator", since whatever (tar) goes into the set at 35 is reduced to coke by the time it reaches "the top of the generator" 7.

" 'The party Tenney thus has no disclosure of the specific liquid fuel—"heavy oil"—of the count, nor does he disclose the conventional forward run (with air) admittedly required by necessary inference.'

"Claims 14 and 19 to 21 stand similarly rejected with respect to their recitation of passing the reverse air blast downwardly through at least the upper portion of the fuel bed. Since they are similar to claim 13 in this respect, it follows they are subject to rejection for the same reasons as applied in detail to claim 13, supra. Of course, it will be noted these claims are not subject to the other objection against claim 13 of reciting *heavy* oil, specifically."

So, it appears that upon this phase of the case the tribunals below were in complete agreement. Obviously, claim 13 was regarded by them as being ambiguous, particularly with respect to the generator feature, and hence it was interpreted in the light of the Nordmeyer and Stone patent in which it originated, and the same was true of the other appealed claims.

It is urged before us on behalf of appellant that the units 1 ("generator") and 4 ("Fuel Chamber") together constitute a generator in the sense in which "generator" is used in the appealed claims, and it is argued that the tribunals of the Patent Office by interpreting "generator" to mean a feature not having a fuel receiving chamber have read a limitation into the appealed claims not justified by the normal meaning of the term "generator," as used in the water gas art.

This obviously constitutes the crux of the case and the authorities cited by ap-

pellant (Sweetland v. Cole, 53 F.2d 709, 19 C.C.P.A., Patents, 751; Knauss et al. v. Anderson, 63 F.2d 450, 20 C.C.P.A., Patents, 914; Altvater v. Knight, 82 F.2d 608, 23 C.C.P.A., Patents, 897), have received our very careful attention.

We do not think it necessary to discuss the facts of those cases. The rule of law here invoked was stated in the Sweetland v. Cole case [53 F.2d 711], as follows: " * * * If, in the respective disclosures, the means are present to meet the count under the normal meaning of its limitations as so determined, then we know of no. authority for the court entering upon a technical research into the respective methods of operation and saying that one device will operate and the other will not, or that one will operate differently from the other."

The rule so stated is well settled but its applicability depends upon the facts appearing in any given case. In that case no ambiguity was found to exist which rendered it proper to resort to the origin of the count in order to interpret it.

In the Knauss et al. v. Anderson case, supra, one of the counts was found to be ambiguous and in interpreting it resort was had to the source of its origin.

In the instant case we are unable to escape the force of the examiner's statement already quoted, to the effect that if Tenney's fuel bed be considered as embracing both zones 1 and 4, as shown in the drawing, he does not disclose the forward air blast, while, on the other hand, if zone 4 be held to be the fuel bed and the generator limited to zone 1, there is no disclosure of admitting oil to the top of the generator, because oil introduced at the top of zone 4 through the pipe 35 would of necessity be coked before descending to the top of chamber 1.

Since there is no material difference between claim 13 and the other appealed claims relative to the "generator" feature, separate discussion of the other claim is unnecessary, and since, in our view, claim 13 must be rejected upon the ground stated, it is unnecessary for us to pass upon the question of whether disclosure of the use of tar alone is sufficient to support the use of "heavy oil" required by that claim.

The decision of the board is affirmed.

Affirmed.